Let me start out with the critical question. Excuse me, Your Honor, my clock says that I have... Here we are. Okay, now you have a minute. Okay, now we're going. I didn't mean to interrupt you, Judge, but I only had a minute as you started talking. Well, my thing, it gave you 20 minutes, so it's interesting. But I think we need to get right to the heart of the matter. If this goes back, what issues should be decided or are open and should be decided by the ALJ? Well, it's a darn good question. The district court said for good cause appearing and then word for word put down what the commissioner had in the proposed remand order. I have no idea, and I don't think this Court has any idea unless it has powers that are superhuman, what good cause appearing means. The district court judge gave us no idea about what was supposed to or what prompted the remand other than with all due respect saying the commissioner wants it, the commissioner gets it. And as you know from my brief, I filed a motion for reconsideration. I specifically pointed out to the district court this Court's concern about basically unarticulated reasons for remand. And all I got back eight months later, I might add, addressing Judge Reinhart's concern about delay in these cases, is a district court statement that says the plaintiff is asking us to rethink what we've already thought. Well, that doesn't tell me much, but I don't know what the Court already thought in the first place. And so that's where I think this Court and I am considerably hampered in trying to figure out what the reasons are for further administrative proceedings in this case. Now, what are the findings in this case as to disability made by the district court? Judge, there are no findings, none, zero, none. I can't answer your question. There is nothing other than for good cause appearing. That is it. I'm sorry. I cannot answer your question. I have no recitation of the facts. There's no rationale given as to why this man should be subjected to further administrative proceedings. There's simply, again, trying to be respectful here, a blind acquiescence in what the Commissioner wanted. Well, let me ask the question differently. You want us to direct benefits. Good question. I want you to direct benefits, yes. This is different from our prior case. But if I don't get what I want there, I at least want a remand order that has some articulation so that when an administrative law judge is looking at this God knows how much farther down the road, the administrative law judge can at least say, okay, here's what the Court is telling me I did wrong, and that's why I have to take actions X, Y, and Z. Well, basically, you're asking us to treat this as a normal appeal where the magistrate below affirms the district court. We should look at the case the same way and either come to the forgetting presumptions of correctness of the district court and all of that standard of review jazz, eliminating that for the moment. What you're saying is that you have a Commissioner decision that's erroneous. You're appealing it, and you want us to award benefits. But if you don't win, then we should certainly remand for a further hearing. A reasoned remand for further proceedings, yes. But please let me make it clear that that's my fallback position. Yes. Okay? Why don't you first tell us why we should award the benefits? What are the issues that you think would require ñ I mean, on what basis should we reverse the ruling and direct benefits? Twofold. This case, by the way, is different from the prior one because here we have vocational expert testimony that addressed some of these limitations. And the vocational expert was asked to look at two things. One, let me preface this. The ALJ said that she was relying upon the opinions of the non-examining State agency physicians. I will point out this Court has never upheld an ALJ decision that relied upon non-examining State agency physicians where they didn't testify at a hearing. But the entirety of the non-examining State agency physicians led to vocational expert testimony that that person can't work. What the ALJ did here is she just said, well, I'm going to take this part, I'm going to take this part, I'm going to take this part, but I'm going to ignore this part over here because that results in a finding in disability. So that's number one. But number two, much, much more important, is the fact that the examining psychiatrist, Dr. Uran, who has pretty darn good credentials that are in my brief, gave an examination and an assessment that also led to vocational expert testimony that that person couldn't work. So the thing that Harmon asks for, namely vocational expert testimony, is what we have here. And so it's very hard to understand why the proposed remand order that the district court essentially signed off on was anything for more than a second bite at the apple, basically redo, relook, reevaluate. And that's, of course, in my opinion at least, the antithesis of the crediting as true doctrine. The crediting as true doctrine says asking ALJs to get it right in the first instance is encouraging them to improve the decision-making process. I'm sorry, Your Honor, go ahead. I didn't mean to step on your answer. Are you done? I am. Okay. Is this man disabled, in your view, because of his psychiatric condition, which causes him not to be able to work, or is it something else? No, it's the psychiatric condition. It's the psychiatric condition. Oh, yes. And the trial counsel, again, that wasn't me, made a candid statement during the hearing. The vocational expert was asked a question that was based upon Dr. Cunningham, who was the one-time physical consultative examiner for the agency. And he came right out and said, I don't have any quarrel with the vocational expert's testimony that is based just on that. But then he went on, and I quoted at fairly length in my brief because I thought it was important, where he says, but let's look at these other things that are part of your hypothetical questions, Judge, and let's look at the totality of the answers to those hypothetical questions. And those resulted in vocational expert testimony that a person so limited could not work. So there's one other thing I want to point out, and then absent further questions, I'm going to sit down. One of the things that I thought was troubling in reading the Commissioner's brief, and I'm sure you're going to reread it as well, is the Commissioner still seems committed to turning this gentleman down. The Commissioner still focuses on the fact that there was very little mental health treatment. That's the reason for an examination, not the reason not to have an examination. The Commissioner still focuses on what the Commissioner considers significant daily activities. My gosh, the guy talks to his neighbors every once in a while, and I think he took a trip or two to see his sister or something. Let me ask this. There were two psychologists or psychiatrists' opinions which seemed to be in conflict. What do you do about that? The problem with that, you're talking about Dr. Bencomo, who was the psychologist, and Dr. Uram, who was the psychiatrist. The problem with that is the ALJ, although she did, in fact, mention Dr. Bencomo's evaluation in the decision, ignored it, didn't say I'm rejecting it, didn't say here's what's wrong with it. And it really comes back to my same point. You know, Barney is all about getting it right the first time, okay? Well, no, you're not answering Judge Fletcher's question. Do you agree there's an inconsistency between Dr. Bencomo and Dr. Uram's testimony? To a degree, Dr. Uram's assessments are more severe than Dr. Bencomo's, so the answer is yes, okay, to a degree. Is there a time difference in those opinions? Yes, there is. I couldn't give it to you off the top of my head, but it's a year or so, yes. Dr. Uram is the later one, but it's correct, Your Honor. And what is your ñ how do you respond to that question of whether there is an inconsistency and whether that therefore makes it less reasonable or unreasonable to issue a decision in reliance on Dr. Uram's testimony, or would you say that both support the decision? I mean, how do you deal with those two doctors? What's very difficult for me to address that, and the reason it's difficult for me to address it, Judge, is that the ALJ didn't address it. So, you know, it's not like I can say, well, here's the reasons the ALJ gave, and that's what it is. I'm having ñ how should we deal with it? I think the way this Court should deal with it ñ I'll give you two answers, my first and my alternative. My first is the ALJ did not assess it, and we don't remand to do redos, because that's what Varney was talking about. My second answer is that if you do remand for further administrative proceedings, unlike the proposed remand order in the district court ñ Oh, you're still not really getting the question, which is ñ I think I'm not understanding. Your first ñ what you want us to do is award benefits. Yes. If we're going to award benefits, what do we say in order to determine whether to award benefits, what do we do with the testimony of these two doctors? You're asking us to do it on the basis of the psychiatric condition. Correct, Your Honor. All right. So do we base it on Dr. Uram's testimony? Do we say it's inconsistent with Dr. Bencomo's or it's later? Do we say that they're both consistent, despite minor inconsistencies? What are you telling us about the testimony? Okay. Definitely Dr. Uram establishes disability because that's the vocational expert's testimony. Dr. Bencomo doesn't have that vocational expert testimony, quite frankly, okay? But that does not necessarily mean that Dr. Bencomo's opinion is inconsistent with the finding of disability. It simply wasn't addressed. And that's the best answer I can give you. What do you mean it wasn't addressed? When he described the psychiatric condition, wasn't he asked to describe it? I didn't really give the full sentence there. I should have said it wasn't addressed by the ALJ in terms of assigning the weight to be accorded to that opinion. I personally, frankly, don't see that Bencomo's evaluation and Uram's evaluation are inconsistent. I'm trying to remember the record here. But it was either Dr. Uram or Dr. Bencomo who characterized Mr. Schnatz's condition as one where the claimant had very little insight, very little insight, which is common in personality disorders and whatnot. So a person with very little insight, and let's face it, Mr. Schnatz is not a very you can tell by reading his testimony, a person with very little insight isn't going to go in and give a clear picture to the examining psychologist. And I think that's something that has to be taken into account when you look at those kinds of statements as well. I think Dr. Uram did a much better job of seeing through that lack of insight and seeing what the underlying problems were. But when even Dr. Bencomo himself says, well, there's a lack of insight here, that's something that has to go into the calculation as to what you're looking at when you're looking at his opinion. I've blown my rebuttal time. But we'll give you a minute for that. Okay. Thank you, Judge. I take it it doesn't matter that he applied because of his physical disabilities, especially because if he's mentally ill, he may not have properly perceived why he was incapable of doing work. Sure. And this Court talked about that in the Regeniter case. And I will tell you. Because he did. He keeps denying he has mental problems. Sure. I suppose that shouldn't take us anywhere. At the hearing himself, you know, when he was asked if he was depressed, he said, well, I don't know. It's kind of a long story. I'm not going to go slowly down a hill. If you know what I mean, you guys probably see I've got a problem. Well, what the heck does that mean? You know. But this is a person who's unsophisticated and relatively inarticulate. And that's something that we have to look at. All right. Thank you. Thank you, Judge. May it please the Court. I'm Michelle Kelly, and I represent the Commissioner of Social Security in the case of Schnatz v. Barnhart. Your Honors, plaintiffs' counsel just said it. There are inconsistencies in the record that need to be resolved. And that is what the Commissioner is supposed to do, is resolve inconsistencies only if they are material to the award of benefits. Two psychiatrists can describe a condition somewhat differently, and they may have somewhat different views. But the inconsistency may not in any way suggest that benefits shouldn't be awarded. What is it that is inconsistent that you think supports the denial of benefits? Your Honor, this is a case where the Commissioner recognized deficiencies in the administrative law judge's decision and voluntarily requested that it be remanded for resolution of the inconsistencies. So whether or not his benefits are denied, I don't know. We've asked that it go back to be raised. What did the Commissioner say were the inconsistencies that required remand? Your Honor, there's very little medical evidence regarding Mr. Schnatz's mental impairment. But what evidence there is, is all inconsistent. Your Honor. I'm asking, is that what it said to the district court? Yes, Your Honor. All right. And I'll find it in the motion to the district court, I would say. Okay. So what's the inconsistency? Your Honor. Dr. Bencomo, who is a psychologist, saw Mr. Schnatz in October 1997. And his assessment basically found that Mr. Schnatz had unlimited to good overall mental functioning, good to fair abilities to deal with work stresses, maintain personal appearance, and demonstrate reliability, and only fair ability to deal with the public. That was the most significant limitation he indicated. And that's at 165 to 168 of the record. Your Honor, we have two reviewing physicians who consulted for the state agency disability determination services, Dr. George and Dr. Enos, both of whom examined the record. But the record that they had to examine was merely Dr. Bencomo's report and assessments. What happened to Dr. Uram? Dr. Uram comes later. Dr. Uram's report was in November of 1998. And her report can be found at 220 to 227 of the record. But, Your Honor, Dr. Jane, Dr. George, and Dr. Enos each issued medical assessments that are inconsistent with one another and with Dr. Bencomo's assessment. In addition, they also assessed Mr. Schnatz's mental ability with a psychiatric review technique to determine whether or not he met a listing at step three of the five-step sequential evaluation. And in this situation, they both also came up with conflicting opinions or assessments. When Dr. Uram eventually saw Mr. Schnatz in November 1998, he assessed moderate to moderately severe mental impairments in almost all areas of functioning. So each and every one of these six opinions is conflicting. But his came last, and probably he was the most qualified, on paper anyway. Your Honor, Dr. Drinkwater, I mean, Dr. Bencomo was a psychologist, and whether a psychologist or a psychiatrist or a psychologist is more qualified, I don't know. A psychiatrist often uses psychologists to help them in assessing mental impairments. But even if he were, I mean, that would be something that the ALJ would need to look at, because in his decision or in her decision, the administrative law judge did not reconcile any of these opinions. But the latest one, Dr. Uram, what you had, the agency had these two outside doctors review the records, right? And then they testified based on that review. Well, then you got a later report from a psychiatrist, and the agency didn't have the experts, their outside experts review that, right? No, Your Honor. Their testimony is not very relevant, because they only reviewed part of the record. Your Honor, they reviewed what they had, which was Dr. Bencomo's report at the time. Well, that's right. But what they had was not a complete record. And, Your Honor, it was plaintiff's attorney, Mr. Schnatz's attorney, who sent him to see Dr. Uram after the plaintiff's. Well, that's all right. But if you want them to review the complete record, then they should review the complete record. Otherwise, their testimony is not going to be very helpful if what it is is a review of the record. Well, Your Honor, that is for the administrative law judge to determine, to resolve all these inconsistencies. Your Honor, Doctors George and Enos were actually asked to review these records at various stages of the administrative process. Dr. George when Mr. Schnatz initially applied for benefits, and Dr. Enos when Mr. Schnatz requested reconsideration. And it wasn't until later that Mr. Schnatz went to see Dr. Uram. Your Honors, in addition, the vocational experts, the vocational expert did actually issue many different opinions. Well, they're all similar opinions, but they're all based upon these six different or at least four different mental assessments. And, Your Honor, Your Honors, I submit, or the Commissioner submits that the hypothetical number two, the administrative law judge did pose Dr. Bencomo's most severe limitation to the vocational expert. And that most severe limitation was no contact with the public. And in response to that, the vocational expert indicated that there were two jobs Mr. Schnatz could do. What were they? Watchmen? Surveillance systems monitor and quality assurance inspector, Your Honor. Your Honor, on hypothetical number three, the administrative law judge then posed Dr. George's mental assessments to the vocational expert. And Dr. George is the reviewing physician who saw Mr. Schnatz after he initially applied for disability insurance benefits. And the administrative law judge posed the limitations of moderate limitations in almost all areas of functioning. And still, the vocational expert came up with jobs that Mr. Schnatz could do. Let me ask this. If we send it back, what should we tell the AOJ to do? Your Honor, the administrative law judge should resolve all these inconsistencies in the record. The administrative law judge's decision was not correct. We recognize that, and we ask the Court initially to send it back. Mr. Schnatz's attorney indicates that the administrative law judge relied on the reviewing physicians, but that's not clear from the record that that's what happened. The residual functional capacity that the administrative law judge actually came up with was something that didn't encompass any of or all of the next limitations that you could glean from the record, just very few. Well, I'm wanting to have you tell me very specifically what we should tell the AOJ to do. I don't think we would just – that he would get much benefit from our just saying, well, here, take it back and do it right. Would she – should we say that there must be additional evidence and additional review and additional examination? What should we say? Your Honor, at this stage, it's many years since Mr. Schnatz was last examined by any physician, and that was – that is one of the options that we suggested to the district court, that Mr. Schnatz be examined again. So they should examine him now and see how he was many years ago? Well, Your Honor, if he had been found disabled, he would still be entitled to disability insurance benefits and theoretically would still be disabled. So at this point, an examination might not be terribly helpful. Or it might be. What do we do about Dr. Uram, who is an able doctor, examined him, gave a report, and the ALJ considered it, reached his conclusion, said he's entitled to no little weight because the claimant didn't see a lot of other doctors many years ago. Now, not much we can do about having him see many other doctors many years ago. So I guess what do we say about the fact that Dr. Uram's conclusions are thrown out the window? Your Honor, I didn't – first of all, Your Honor, I know that my time has elapsed, so if you would like me to finish and answer your question. Oh, that's all right. As long as we're torturing you, stay there. Your Honor, Your Honor, the administrative law judge did indicate in the administrative hearing decision that she was giving little weight to Dr. Uram. Did more than indicate. She said clearly that she was not. Yes, Your Honor. And as you point out, she, on the face of it, didn't seem to give very sufficient reasons for doing that. If you – in actually examining the administrative law judge's decision, you can glean that she was discounting Dr. Uram for the same reason she discounted the plaintiff, because Dr. Uram relied – I'm sorry, Mr. Schnatz – because Dr. Uram relied, made a lot of his findings specifically on Mr. Schnatz's own reports, which, of course, all would go to his own credibility. The Commissioner submits that the administrative law judge did an adequate credibility finding of Mr. Schnatz, and so ergo then did adequately discount Dr. Uram. But, granted, Your Honors, you may not find that or you may not see that – you may not see that. And so we suggest, or the Commissioner suggests, that this – that this case go back to the administrative law judge so the administrative law judge can reexamine all this evidence, articulate what weight he's giving to Dr. Bencomo, articulate what weight, if any, he's giving to the reviewing physicians, articulate what weight he's giving to Dr. Uram. Let me ask you something, just hypothetically here. Suppose we said, well, Dr. Uram was improperly discredited and we require that Dr. Uram be credited. At that point, is there anything left to do? Does that kind of end the case if Dr. Uram is given – you know, is treated as fully effective here? Well, yes, Your Honor, it would, but that – What's left? What's left is to reconcile all of these inconsistent opinions. There's no reason why Dr. Uram – there's no reason articulated in the – on the face of this decision why Dr. Uram – or even in the record, why would Dr. Uram be entitled to more weight than any other physician or any other treating source? Because that was – my hypothetical was Dr. Uram is it. Okay. Dr. Uram's opinion is it. Is that the end of this case? Your Honor, I would say – If that was it. I would say if Dr. Uram was the only doctor in here and his opinion was uncontroverted and his assessment was given to the vocational expert, which it was, and the vocational expert said this person could not do any jobs, yes, I would say that is the end of the story. That's what I want to know. Okay. Just one other question and then we'll let you go. Do you happen to have the motion that the commissioner made for remand in the district court? It's not in either excerpt of record, but I'm sure it's in the complete record. I do. Do you have it? You don't have it with you? I may, Your Honor. I'll have to dig for it. I might – I might relate to you that I was called by a clerk of the San Francisco appellate court several weeks ago and they asked me to provide that information and I did. I sent it to Seattle. Okay. Thank you, then. Okay. Thank you. I think I know where. Thank you very much.  Thank you. The case case to argue will be submitted. Now we get to the case. Do we want to give him his minute or whatever? Do you want your minute? Sure. I keep trying this and it never works. And I won't even need the whole minute. Here's the district court order, found in excerpt of record 130. We have the order. You will look at it in vain to find the word inconsistency. You will look at it in vain to find a reference to Dr. Bencomo's. No, it doesn't tell us anything, but we might find out from the motion. I will tell you that when you read the motion, it will be word for word what this order says. All right. I'll stake my license on it. The only other thing I wanted to correct is the statement that the state agency physicians didn't provide assessments. You know, I don't like talking about state agency physicians anyway because I don't think there's substantial evidence, but it's just not true. The ALJ at page 105 of the excerpts of record says I'm relying on exhibit 5F. Page 126 of the excerpts of record tells you what exhibit 5F is. It's the assessment of the state agency physicians. And they did result in vocational expert testimony that a person so limited couldn't work. Thank you, counsel. Thank you, Judge. The case case to argue will be submitted. The next case on the calendar is Gillette Netting v. Barnhart. That was actually somewhat helpful. All right. Counsel. This is another Social Security case, but slightly different. May it please the Court. My name is Hagida Lowell. I represent the Barnhart family. I would like to reserve one minute rebuttal time, if I may, Your Honors. Rhonda and Robert Netting wanted children and tried throughout their marriage to conceive children. In fact, I think we probably all know the facts. It's a fairly interesting issue. But we know what the problem is, whether a child conceived after the death of the father is a child eligible for benefits under the statute. Certainly, Your Honor. I'll get to the relevant provisions. The Commissioner is arguing that under the Social Security Act, these two 7-year-olds are not children. This defies the plain language of the Act.
judges: B. Fletcher, Reinhardt, Restani